# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

STEPHEN H. UNDERWOOD,      )
                           )
            Plaintiff,     )
                           )
v.                         )     Case No. CIV-12-238-FHS-KEW
                           )
CAROLYN W. COLVIN, Acting  )
Commissioner of Social     )
Security Administration,   )
                           )
            Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff Stephen H. Underwood (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 14, 1959 and was 51 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a road foreman. Claimant alleges an inability to work beginning June 1, 2008 due to limitations resulting from angina, asthma, depression and other mental problems, alcoholism, back pain, susceptibility to heat

stroke, and poor vision and hearing.

**Procedural History**

On May 27, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 23, 2010, an administrative hearing by video was held before ALJ Osly F. Deramus. On November 4, 2010, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on March 29, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to consider all of Claimant's severe impairments; (2) engaging in an improper credibility analysis; (3) arriving at an improper RFC; and (4) making erroneous findings at step five.

## Consideration of Severe Impairments

In his decision, the ALJ determined Claimant suffered from the severe impairments of depression, degenerative disease of the lumbar spine, and asthma. (Tr. 11). He also found Claimant retained the RFC to perform light work. (Tr. 12). After consultation with a vocational expert, the ALJ determined the grids mandated a finding of not disabled. He also found Claimant could perform the representative job of hand bander which exists in significant numbers in the regional and national economies. (Tr. 17).

Claimant contends that the ALJ should have included the additional severe impairments of bipolar II disorder, obsessive-compulsive personality traits, and degenerative disease of the thoracic spine and fusion from the L3 level through S1 level. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged

5

impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

6

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

With regard to the degenerative disease of the thoracic spine impairment, a September, 2009 MRI showed Claimant hemangiomata were noted in the T7 and T5 vertebral bodies, a small right paracentral disc protrusion mildly deforming the right aspect of the cord at T4-5, a broad diffuse disc bulge at T5-6, and a small central disc protrusion at T6-7. (Tr. 390). The ALJ included limitations to accommodate the lumbar interbody fusion at L3-4, L4-5, and L5-S1 as a severe impairment. (Tr. 15). Nothing in either the remainder of the medical records or Claimant's testimony would distinguish this condition as a separate and distinct severe impairment from the lumbar impairment for which the ALJ has made accommodation. The exclusion of this condition as a severe impairment was not erroneous.

With regard to Claimant's mental status, he was evaluated by Dr. Patricia Walz in July of 2009. Dr. Walz diagnosed Claimant with Bipolar II Disorder, Most Recent Episode Depressed, Alcohol Dependence v. Abuse, Abuse of Narcotic Pain Medication, Obsessive - Compulsive Personality Traits, and a GAF of 45-50. (Tr. 259).

7

Claimant told Dr. Walz that his obsessive-compulsive behavior caused him to count things over and over and say things over and over. He did not believe the behavior affected his functioning. (Tr. 256). Moreover, the ALJ examined depression as a severe impairment under the "paragraph B" criteria under the mental limitations under Listing 12.00 - the listing includes bipolar disorder and obsessive compulsive disorder. (Tr. 11-12). Claimant has not demonstrated that these additional mental impairments caused further significant limitation to his ability to engage basic work-related activities. The ALJ did not err by failing to include these conditions as severe impairments at step two.

### Credibility Analysis

Claimant contends the ALJ improperly rejected his testimony as not credible. As is the habit of most ALJs, the ALJ presiding over this case employed improper boilerplate language which suggests the he first reached an RFC then tested Claimant's credibility against it, which is the reverse of the appropriate analysis. This Court looks forward to the point where this language is omitted from ALJ decisions.

Additionally, the obvious typographical errors in the ALJ's decision are atrocious. In one sentence, the "claimant's current lawyer poisons his trust of coworkers and supervisors" when the proper words were "claimant's paranoia poisons his trust of coworkers and supervisors." (Tr. 14). In another portion of the

8

decision, the ALJ states that "[t]he fact that the climate's wife works. . ." instead of "claimant's wife." (Tr. 14). This Court is hopeful the ALJ will be more careful in the future so that this unfortunate confusion does not arise again.

The ALJ, however, makes sufficient linkage between his findings on credibility and the medical record to satisfy his obligation. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);

and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds no error in the ALJ's credibility findings.

### RFC Determination

Claimant contends the medical evidence does not support the ALJ's RFC in which he stated Claimant could perform light work. Dr. Ashley Gourd evaluated Claimant in August of 2009. She found Claimant had no significant range of motion deficits, although he did complain of some discomfort with lumbar spine testing. His strength was 5/5 in all extremities. Claimant's gait was stable and steady without the use of assistive devices. He was found to be able to ambulate and able to rise from a seated position without difficulty. (Tr. 262). Claimant reported that his depression/anxiety had been worsening over the past several months with multiple suicide attempts. (Tr. 263).

In September of 2009, Dr. Cynthia Kampschaefer completed a Mental RFC Assessment on Claimant. She found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the

general public. (Tr. 268-69). Dr. Kampschaefer concluded Claimant can understand, remember, and carry out simple tasks. He could interact with others at a superficial level, but not the general public. He could adapt to a work situation. (Tr. 270).

In September of 2009, Dr. Janet Rodgers completed a Physical RFC Assessment on Claimant. She found Claimant could occasionally lift/carry up to 50 pounds and frequently 25 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and engage in unlimited pushing and pulling. Dr. Rodgers noted Claimant's complaints of back pain but that the current examination showed full range of motion of the back and extremities. Straight leg raising was negative. No motor or sensory deficits were found. No tenderness or muscle spasms were found in the back. His gait was stable and steady without use of an assistive device. His muscle strength was 5/5 in all extremities. (Tr. 287).

In October of 2009, Claimant was attended by Dr. Frank Tomecek. He found Claimant had a marked decreased range of motion of his back to extension but was able to flex and nearly touch his toes. He noted positive straight leg raising on the left. His gait was antalgic. Claimant's upper and lower extremities were 5/5 bilaterally. Dr. Tomecek found a bulging disc and degenerative changes at L4-5 and mild bulging at L3-4. (Tr. 299).

In March of 2010 after Claimant underwent lumbar spine

surgery, Dr. Tomecek found he was having very little to no pain with no narcotics. Although Claimant had been using a walker, Dr. Tomecek told him he could stop when he is ready. Claimant was doing well enough that he declined physical therapy. Claimant stated he had been lifting his granddaughter who weighs 25 pounds. (Tr. 433). By July of 2010, Dr. Tomecek found Claimant was having problems with pain. He did not walk much because he had no endurance. He could only flex 10 degrees before he stated to feel pain but then he could flex 70 degrees. Claimant could not get back to a straight position because his back muscles were so weak due to deconditioning and lack of exercise. (Tr. 438).

Claimant also contends the ALJ improperly rejected the findings of two treating physicians - Dr. Robert Williams and Dr. Donald Chambers. Dr. Williams completed a Physical RFC Assessment in September of 2010. He found Claimant could occasionally lift and carry 0-5 pounds and rarely 6-10 pounds. He could sit for 6 hours, stand and walk 2 hours in an 8-hour workday. (Tr. 467). Claimant could never push/pull, work in an extended position, work above shoulder level, work overhead, and reach. He could not bend, squat, crawl, stoop, crouch, kneel, balance, twist, or climb. (Tr. 468).

In August of 2010, Dr. Chambers completed a Mental RFC Assessment. He determined Claimant was markedly limited in interacting with supervisors, maintain concentration for extended

periods of time, complete a normal workday, complete a normal workweek, perform at a consistent pace, avoid undue constriction of interests, and could not behave in an emotionally stable manner. (Tr. 463-64). Dr. Chambers found Claimant suffered from chronic depression with paranoia - conjugal and suspicion of others. His paranoia poisons his trust in co-workers and supervisors. (Tr. 465).

The ALJ rejected Dr. Chambers' opinions as possibly provided to assist Claimant. The ALJ's reasoning in rejecting the opinions of Dr. Chambers are so confused as to make it incapable of deciphering. He appears to accept portions of Dr. Chambers' opinions while rejecting others with no justification other than supposition. (Tr. 14-15). Similarly, the ALJ rejects Dr. Williams' opinions as being in conflict with Dr. Tomecek's findings. (Tr. 15). The ALJ goes no further to specify the details of the conflict.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

13

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

14

legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ failed to explain the basis for the wholesale rejection of Dr. Chambers' and Dr. Williams' opinions. Moreover, this Court is concerned with failure of the ALJ to include mental limitations in Claimant's RFC when ample evidence exists in the record that Claimant's mental and emotional state continues to decline. The ALJ shall re-evaluate Claimant's mental limitations as well as the opinions of Dr. Chambers and Dr. Williams on remand. Additionally, the ALJ shall take care to eliminate the many scrivner's errors contained in his decision. The unusually large number of errors makes evaluating the decision exceptionally difficult.

**Step Five Findings**

The ALJ's findings at step five are confusing at best. He references Listing 204.00 but this section applies to heavy work. (Tr. 17). Additionally, on remand, the ALJ shall reformulate his hypothetical questioning of the vocational expert after re-evaluating the opinions of Claimant's treating physicians and reconsidering the medical evidence of Claimant's mental limitations.

**Conclusion**

The decision of the Commissioner is not supported by

substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

    DATED this 16th day of August, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE